In re Anonymous No. 29 D.B. 79 and No. 18 D.B. 80

Disciplinary Board Docket no. 29 D.B. 79 and 18 D.B. 80.

ELLIOTT, *Board Member,* January 16, 1981— Pursuant to Pa.R.D.E. 208(d), the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

On September 7, 1979, the Office of Disciplinary Counsel charged attorney [ ] (respondent) with acts of misconduct including making misrepresentations to a court and engaging in ex parte communications on the merits with a court (29 D.B. 79). The hearing committee found violations of D.R. 1-102(A)(4) and (6), D.R. 7-102(A)(1) and (2), and D.R. 7-110(B), and recommended an informal admonition. Respondent did not accept the determination of the hearing committee and requested review.

On March 31, 1980, the Office of Disciplinary

Counsel again charged respondent with further acts of misconduct, consisting of two separate charges, including neglect in the pursuit of a legal matter entrusted to him, failure to return an unearned retainer, handling a legal matter without adequate preparation in the circumstances, dealing in a legal action the sole purpose of which is harassment and engaging in ex parte communications with a district magistrate. After a hearing, the hearing committee reviewed all of the charges including its prior determination under abbreviated procedure and found violations of D.R. 1-102(A)(4) and (6), D.R. 7-102(A)(1) and (2), and D.R. 7-110(B), with respect to 29 D.B. 79; D.R.2-110(A)(3), and D.R. 6-101(A)(3), with respect to Charge I of 18 D.B. 80; and D.R. 1-102(A)(6), D.R. 6-101(A)(2), D.R. 7-102(A)(1) and (5), and D.R. 7-110(B)(2), with respect to Charge II of 18 D.B. 80. The hearing committee recommended a private reprimand and the Office of Disciplinary Counsel excepted, seeking more severe discipline.

## II.  STATEMENT OF FACTS

In the proceedings at 29 D.B. 79 the parties have stipulated to all of the basic facts. In the proceedings at 18 D.B. 80, the hearing committee reviewed the evidence and made specific findings of fact (report of hearing committee at 8-18, hereinafter Rep.). In neither proceeding are the findings of fact at issue.

A.  29 D.B. 79.

Respondent represented [A] in a landlord tenant dispute in which a default judgment for $300 and for possession was entered against [A] (Petition for Discipline, ¶3, hereinafter "Pet."). That judgment was entered on December 20, 1977 and the 20 day appeal period elapsed on January 9, 1978. On

January 10, 1978, respondent filed a notice of appeal and the adverse party petitioned to strike the appeal as untimely (Pet., ¶3(a) and (b)). At the argument on that petition, respondent represented to Judge [B] that he had attempted to file the notice of appeal on January 9, 1978 but was precluded from doing so because the prothonotary's office was closed on that day due to inclement weather (Pet., ¶5). On April 21, 1978 Judge [B] entered a rule to show cause why the appeal should not be dismissed.

At a further hearing on the matter on June 2, 1978, Judge [B] suggested to respondent that he adduce some evidence to support his contention that the prothonotary's office was closed (Petitioner's Exhibit 2, hereinafter PE). On June 6, 1978, respondent sent a letter on the merits of the case to Judge [B] without sending a copy to opposing counsel (Pet., ¶9). Enclosed with the June 6, 1978 letter were a letter from the prothonotary's office and an affidavit taken by respondent. Respondent's letter repeated his contention that "the clerk's desk was not open for me to file this appeal." (Pet. ¶10). Similarly, his enclosed affidavit stated that "the facilities to file the appeal was not open [sic]." (Pet., ¶10). The enclosed letter from the prothonotary did *not* state that the office was closed on January 9, 1978 (Pet., ¶10). Nonetheless, on the basis of respondent's affidavit, Judge [B] denied the petition to dismiss the appeal (Pet., ¶11).

Opposing counsel immediately requested reconsideration of the order. A hearing was held at which further evidence was presented which showed, inter alia, that the prothonotary's office was open during regular business hours from 8:30 a.m. to 4:30 p.m. on January 9, 1978 (Pet., ¶13) and that respondent arrived there between 4:00 p.m. and 5:00 p.m. and found the office closed (Pet ¶14).

Respondent could not be more specific about the time of his arrival. On the basis of this evidence, Judge [B] set aside his earlier order and dismissed the appeal (Pet., ¶16).

B.  18 D.B. 80, Charge I.

On November 14, 1978, [C] retained respondent to institute a divorce action on his behalf (Rep. at 9). Respondent said that his total fee would be $550 and [C] thereupon paid $300 to respondent as a retainer (Rep. at 9). On November 20, 1978, respondent filed a divorce complaint but the sheriff was unable to effect service (Rep. at 9). During the last week in December, 1978, [C] notified respondent that his wife had still not been served and that the sheriff said that it would be necessary to reinstate the complaint. Respondent said that he would do so promptly (Rep. at 9). On March 8, 1979, over two months later, respondent filed a praecipe to reinstate the complaint (Rep. at 10). Respondent then failed to deliver a copy of the reinstated complaint to the sheriff's office and thus service was still not accomplished (Rep. at 10).

On March 12, 1979, [C] retained other counsel. At about the same time, he instructed respondent to discontinue the original divorce action (Rep. at 10). From March to June of 1979, [C] repeatedly requested that respondent discontinue the original divorce action (Rep. at 10, 11). Respondent was also requested to return the unused portion of the $300 retainer.

On June 13, 1979, three months after his client's instruction to do so, respondent attempted to discontinue the original divorce action but, by using the incorrect term and number on the caption, discontinued a second divorce action commenced by [C]'s new counsel. This error was discovered and corrected two months later. (Rep. at 11).

On June 27, 1979, [C] wrote to respondent and formally discharged him as counsel and requested a refund of the unused portion of the $300 retainer and an accounting of the legal services provided (Rep. at 11). Respondent replied three months later on September 26, 1979 that no refund was due because the $300 was expended on the case (PE 5, Exhibit "A").

C. 18 D.B. 80 Charge II.

On April 23, 1979, [D] retained respondent to prepare a power of attorney for a real estate closing in Virginia (Rep. at 12). Respondent prepared the power of attorney but neither an acknowledgement nor a provision for execution before a notary public were included on the form (Rep. at 12). Respondent's services consisted of copying a form from a form book (PE 12). Respondent charged [D] $75 for the power of attorney (Rep. at 12).

The Virginia attorney involved in the real estate closing refused to accept the power of attorney because it lacked an acknowledgement. He prepared another power of attorney for [D] at no charge (Rep. at 13).

Subsequently, [D] demanded a refund of the $75 fee from respondent (Rep. at 14). Having received no satisfaction from respondent, [D] filed a complaint for recovery of the fee with a district magistrate. On August 14, 1979, default judgment was entered against respondent (Rep. at 14).

On August 20, 1979, respondent sent a letter to the district magistrate, without sending a copy to [D], in which he stated that he had not received notice of the hearing, that the power of attorney which he prepared "was strickly [sic] from a form book and there is absolutely no foundation to this suit," and that if [D] is "the type of new people that come into our area, I think she ought to leave the

area." (PE 12). At a second hearing on September 4, 1979, judgment was again entered against respondent. Respondent appealed to the Court of Common Pleas of [ ] County (Rep. at 15).

On October 3, 1979, [D] filed a complaint against respondent in the court of common pleas seeking recovery of the fee. At the same time, she filed a complaint with the Censor's Committee of [E] County (Rep. at 15). After several communications with the [E] County Censor's Committee and with the Office of Disciplinary Counsel, respondent filed a counterclaim in trespass against [D] claiming that her lawsuit against him was "willful and malicious" and seeking damages not in excess of $10,000 for "great humiliation" and the time and expense of defending himself (Rep. at 16-17).

Evidence further reveals that respondent graduated from law school in 1966, served in the United States Army until January, 1969 with a military operation specialty in artillery, and clerked for a distinguished jurist from 1969 to 1972. Since 1973 respondent has been in private practice. He has not been a defendant in any civil action nor arrested or prosecuted for any criminal charge during the last ten years.

## III. DISCUSSION

The board fully concurs with the findings of violations by the hearing committee. With respect to 29 D.B. 79, the facts show that respondent represented to the. court that the prothonotary's office was closed, a fact crucial to the decision on a petition to dismiss an appeal, before he had made any investigation to determine the truth of the allegation. Although he had procured a letter from the prothonotary which did not support his factual allegation, he again misrepresented to the court that

the filing desk of the prothonotary's office was closed both in an affidavit and in his ex parte letter to the court. Evidence presented at a subsequent hearing demonstrates that the office was open during regular hours and that respondent arrived at the end of the day, possibly after the regular closing time. The board finds that respondent at the very least should have had substantial doubts as to the truth of his representation to the court and therefore violated D.R. 1-102(A)(4) and (6).

Furthermore, respondent engaged in an ex parte communication on the merits with the court by mailing the prothonotary's letter and his affidavit along with a cover letter to Judge [B] without promptly sending a copy to opposing counsel. Respondent presented no justification for this basic breach of ethics which is particularly egregious for a former law clerk. The record reveals a clear violation of D.R. 7-110(B).

One of the most distressing aspects of this case is the recidivism shown by respondent in 18 D.B. 80. After having been contacted by the Office of Disciplinary Counsel concerning the first instance of an ex parte communication, respondent once again chose the avenue of ex parte communication to persuade the district magistrate of his defense in the [D] case. Respondent also took this ex parte opportunity to abuse his position as a member of the bar by gratuitously insulting [D], a lay person with whom he had a fee dispute. This incident is, unfortunately, illustrative of his attitude toward clients who dare express dissatisfaction with his services.

In both [D]'s case and with respect to the [C] divorce, respondent consistently refused to refund fees for services improperly performed and from which the client received no benefit.

Because of his dilatory irresponsible conduct of

the [C] divorce, respondent clealry earned no part of his fee and he should have returned the $300 retainer promptly. His failure to do so violated D.R. 2-100(A)(3). Similarly, respondent violated the same disciplinary rule by refusing to refund the $75 fee paid by [D] for a power of attorney which could not be used for its intended and disclosed purpose. In the [A] case and the [C] case, respondent also conducted himself in a dilatory fashion. For [A], he waited until the last minute of the last day to attempt to file a notice of appeal and, not surprisingly, found himself unable to do so. For [C], he took over two months to reinstate a complaint and then failed to have it served. Three months and numerous requests were necessary to prod respondent to discontinue the action and then he discontinued the wrong action. An additional three months were required for respondent to reply to his client's request for a refund and an accounting. Only then did [C] learn that the dilatory and ineffective manner in which respondent had pursued his case would cost him $300.

Finally, respondent's attitude toward his clients who have questioned his services presents a serious danger to the public. Respondent's vindictiveness is amply demonstrated by his malicious counterclaim against [D], the purpose of which could only be for harassment, and his ex parte remark to the district magistrate that "she ought to leave the area." Respondent views any shortcoming of his practice as the fault of others; sometimes "the form book," sometimes other counsel, but usually his clients. In unsolicited testimony, which the hearing committee cited in its opinion, respondent stated:

"Not the [Ds] the [Cs] and the [As] that we have seen, but the vast majority of my clients, are good people. This is the way I practice law every day. I

mean, most of my clients are good people." (18 D.B. 80, N.T. 237-238)

This vindictive and self-righteous attitude which jeopardizes not only the best interests of his clients but also the image of the bar is a clear danger to the public. Accordingly, the board finds and recommends that a strong disciplinary sanction is required in this case.

The board finds violations of D.R. 1-102(A)(4) and (6), D.R. 7-102(A)(1) and (2), and D.R. 7-110(B) in 29 D.B. 79; D.R. 2-110(A)(3) and D.R. 6-101(A)(3) in 18 D.B. 80, Charge I; and D.R. 1-102(A)(6), D.R. 6-101(A)(2), D.R. 7-102(A)(1) and (5), and D.R. 7-110(B)(2) in 18 D.B. 80, Charge II.

## IV. RECOMMENDATION

The board respectfully recommends to your honorable court that respondent be suspended from the practice of law for a period of one year.

Mrs. Hammerman, Messrs. Pearlstine, Anderson and Harrington dissent and would recommend a public censure.

Messrs. Johnson and Daniels did not participate in the adjudication.

## ORDER

O'BRIEN, *C.J.*, And now, February 27, 1981, the recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated January 16, 1981, is accepted; and it is ordered, that [respondent] be, and he is suspended from the practice of law for a period of one year in the Supreme Court and in all the courts under its supervisory jurisdiction, until further order of this court. [Respondent] shall comply with all of the provisions of Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement.